UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT CARTER, | ) | Case No. 3:16CV980 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| | ) | |
| SHELBIE SMITH, Warden[1], | ) | |
| CORRECTIONAL RECEPTION CENTER, | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Respondent. | ) | |
| | ) | |

On April 14, 2016, pro se Petitioner Robert Carter ("Petitioner") executed a petition for a writ of federal habeas corpus pursuant to 28 U.S.C. § 2254, which was filed in this Court on April 25, 2016. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred in conjunction with his Lucas County, Ohio Court of Common Pleas conviction for aggravated murder with a firearm specification. ECF Dkt. #8-1 at 38-39. On July 19, 2016, Respondent Shelbie Smith, Warden of the Correctional Reception Center in Orient, Ohio ("Respondent") filed a return of writ. ECF Dkt. #8. On April 5, 2017, Petitioner pro se filed a traverse. ECF Dkt. #13.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

I.    **SYNOPSIS OF THE FACTS**

The Sixth District Court of Appeals of Ohio set forth the relevant facts on direct appeal. ECF Dkt. #8-1 at 82-85. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403.

---

[1]  The Warden of the Correctional Reception Center is Shelbie Smith according to the Ohio Department of Rehabilitation and Correction website. The docket should reflect the Warden's name.

{¶ 2} Appellant's conviction stems from an incident that occurred on the evening of December 24, 2012, involving the murder of appellant's estranged wife, Wendabi Triplett. Appellant and Triplett had recently separated. Not willing to accept the separation, appellant made numerous contacts with Triplett's friends in an effort to discover Triplett's whereabouts. During these contacts, appellant expressed concerns that Triplett was cheating on him. On one such occasion, he informed Triplett's close friend, Tamara Russell, that he wanted to "slit [Triplett's] throat." Further, Russell testified that appellant told her "If I can't have her, ain't nobody have her. I just want to kill her. I just want her to be dead. I just want her dead. I just want to slit her throat and blow her head off."

{¶ 3} Early in the evening of December 24, 2012, Triplett traveled to her parents' home to attend a Christmas party with her family. She was accompanied by her son, Wa.B., her daughter, Wykeisha Boykin, and her brother, Marvin Sutton. At around 11:00 p.m., Triplett and the others departed from her parents' home and drove to another Christmas party at a friend's, Eva Weaver, home located in Toledo.

{¶ 4} In the meantime, appellant was driving around Toledo with his cousin, Craig Coleman. Coleman testified that he and appellant were "looking at some houses" on the night in question. He identified the vehicle that appellant was driving as a dark Ford Focus. At one point during their drive, appellant stopped at a house for five minutes. Upon appellant's return to the vehicle, he informed Coleman that he had "something important to do, I don't want to get you involved, I'm going to drop you off." Appellant then proceeded to drop Coleman off prior to the time the shooting occurred.

{¶ 5} Upon Triplett's arrival at Weaver's residence, an assailant, later identified as appellant, confronted her on the street. Shortly thereafter, several gunshots were heard by witnesses who were present on the scene, including Boykin, Wa.B., and Sutton. After the first three rounds were fired, Triplett fell to the ground. After a brief pause, several more shots were fired at Triplett from point blank range. At trial, Sutton testified that he saw two men flee the scene after the shots were fired. He stated that he was "very positive" that appellant was one of those men. However, Sutton stated that appellant's face was partially covered by what appeared to be a ski mask.

{¶ 6} Boykin also testified at trial concerning the incident that occurred in front of Weaver's residence. Boykin was seated immediately behind Triplett at the time of the incident. During her testimony, Boykin identified appellant as the shooter. She testified that appellant's face was not covered. Further, when asked if she was sure that appellant was the one that shot her mother, Boykin stated, "I know for sure, I'm a hundred percent sure ." Boykin stated that appellant fled the scene in a dark Ford Focus after shooting Triplett.

{¶ 7} Wa.B. also testified at trial. On the night of the murder, Wa.B. was seated directly behind Sutton on the passenger side of Triplett's vehicle. Wa.B. heard "five to six" gunshots before realizing that Triplett had been shot. He testified that he saw two people pull up to Triplett's car driving the same car appellant was driving on a prior occasion.

{¶ 8} In addition to the foregoing witnesses, a nearby homeowner, Clarence Hornbeak, was outside of his home at the time and witnessed the murder. During his testimony, Hornbeak stated that he saw an assailant matching appellant's description fire three shots, pause for three to four seconds, and then proceed to fire two more shots toward the ground where Triplett was lying. After the shots were fired,

-2-

Hornbeak heard someone shout "someone shot my mom," after which he saw the assailant flee the scene driving a dark blue Ford Focus.

{¶ 9} Immediately after the murder occurred, Toledo police were notified and an investigation was conducted. As part of the murder investigation, an autopsy was conducted to determine Triplett's cause of death. The results of the autopsy confirmed that Triplett died from multiple gunshot wounds. The most devastating gunshot wound was found on Triplett's neck. Upon further examination, the coroner, Dr. Cynthia Beisser, determined that the bullet that created the wound entered through the neck and severed Triplett's spinal cord, causing immediate and complete paralysis.

{¶ 10} Appellant, being notified by his "second wife" that he was wanted by the Toledo Police Department for questioning in connection with Triplett's murder, surrendered himself to police on December 25, 2012. He was questioned by Toledo detective, Larry Anderson.

ECF Dkt. #8-1 at 82-85.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

In its January 2013 term, the Lucas County Grand Jury indicted Petitioner on one count of aggravated murder in violation of Ohio Revised Code ("ORC") § 2903.01(A) and (F) with a firearm specification.  ECF Dkt. #8-1 at 5.  Counsel was appointed for Petitioner by the trial court at arraignment and Petitioner entered a not guilty plea.  *Id.* at 7.  Petitioner's trial counsel filed a motion to withdraw as counsel, which the trial court denied at the pretrial on May 14, 2013.  *Id.* at 8.

On May 23, 2013, Petitioner, through counsel, filed a motion for a court order to allow him to view DVDs provided by the prosecution to his counsel without his counsel present because he wanted to view the numerous DVDs at times when his counsel would not be at the jail.  ECF Dkt. #8-1 at 9.  The trial court granted that motion on June 6, 2013.  *Id.* at 11.

On May 23, 2013, Petitioner filed his own motion with the court requesting that the court appoint him new counsel because "current counsel has proven himself not to be acting in the defendant's best interest" as he had filed motions without Petitioner's approval and had not been communicating with Petitioner about his case.  ECF Dkt. #8-1 at 13.  On June 21, 2013, the trial court granted an oral motion by Petitioner's counsel to withdraw from his case due to a conflict.  *Id.* at 16.  New counsel was appointed.  *Id.*

Petitioner pro se filed a document on July 2, 2013 in which he indicated that he was filing a motion to dismiss on the ground that his speedy trial rights were violated. ECF Dkt. #8-1 at 17. On July 5, 2013, Petitioner pro se filed a document indicating that he did not authorize the rescheduling of his trial date and he wanted his trial date to remain. *Id*. at 18. Petitioner pro se also filed a document on July 24, 2013 indicating that the DVDs he received for viewing were tampered with because parts were missing from them. *Id*. at 23. On August 9, 2013, the trial court held a pretrial on Petitioner's requests and motions and denied Petitioner's motion concerning his speedy trial rights and ordered the State of Ohio to make a duplicate of the same disc to include DVDs that were previously provided to Petitioner. *Id.* at 26. On August 30, 2013, Petitioner pro se filed a document indicating that parts were taken out of the DVDs that he received and he requested a viewing of the witnesses' original statements and the original DVDs. *Id.* at 27.

On August 19, 2013, Petitioner, through counsel, filed a motion in limine excluding evidence of references to an alleged incident and conversation that occurred on November 5, 2012, involving Petitioner and his stepchildren, witnesses in the case. ECF Dkt. #8-1 at 28-29. The State of Ohio filed a response. *Id.* at 30-33. After holding a hearing, the trial court partly granted Petitioner's motion, excluding witness testimony as to those matters beyond first-hand knowledge. *Id*. at 34.

A jury was empaneled and trial began on September 3, 2013. ECF Dkt. #8-1 at 34. During the trial, the jury was shown a disc containing the video of Petitioner's interview with Detective Anderson. ECF Dkt. #8-3 at 163. The parties had stipulated to the discs that contained Petitioner's interview into evidence based upon portions of the video being redacted as to Petitioner's criminal history. *Id*. As identified by the prosecution before playing them for the jury, the discs were labeled redacted. *Id.* However, upon playing the beginning of the first four minutes of the first disc of the interview to the jury, it was discovered that it was not redacted and in fact Detective Anderson mentioned on the disc that he had in his hands a record of Petitioner's criminal history and he was reviewing it with him. ECF Dkt. #8-3 at 165.

Upon realization of the error, the DVD was stopped and counsel for both parties and Petitioner sidebarred with the trial court and then the jury was excused so that the issue could be discussed. The trial court asked for a remedy for the disclosure of some of Petitioner's criminal

-4-

history to the jury, indicating that the disclosure was clearly prejudicial to Petitioner. ECF Dkt. #8-3 at 165-166.  The court suggested that it would instruct the jury that they mistakenly heard the unredacted version of the interview and they were to disregard any reference to the criminal history. *Id*. at 166.  The prosecution agreed with the trial court's suggestion, but Petitioner's counsel moved for a mistrial pursuant to Rule 404 of the Federal Rules of Evidence.  *Id.* at 167.  Petitioner's counsel explained that the jury heard Detective Anderson say at the interview that Petitioner had a seven-page criminal record that included a 2007 aggravated menacing conviction.  *Id*. at 170.  Petitioner's counsel also noted that the jury heard about a protection order against Petitioner.  *Id*.  Counsel for Petitioner asserted that a curative instruction to the jury would not "unring the bell" concerning these prior acts.  *Id*.  The prosecution cited to prior caselaw in which errors similar to the instant case had arisen and harmless error was found because the rest of the evidence presented as a whole was so overwhelming that it negates the harm caused by the disclosure of the forbidden information.  *Id*. at 171.  The trial court denied the motion for a mistrial, citing Ohio caselaw and finding that a curative instruction would be sufficient following questioning each individual juror about what they heard and whether they could disregard what they heard and be fair and impartial in rendering a verdict on the case in front of them, and using alternate jurors if necessary.  *Id*. at 171-176.

The trial court, along with each individual juror, Petitioner, his counsel, and the prosecutor, went back to the judge's chambers, and the judge questioned each juror and allowed each counsel to question each juror, about what they had heard and viewed in the first four minutes of the disc. ECF Dkt. #8-3 at 176-219.  The court informed each juror that what they heard or saw in that first four minutes, if anything, had nothing to do with the instant case, and told each juror to disregard anything that they heard or saw in that first four minutes.  *Id.*  The trial court then indicated that it had questioned each juror and the alternate jurors and it was satisfied that what each juror indicated that he or she had heard or seen in the first four minutes of the video did not substantially prejudice Petitioner's right to a fair trial.  *Id.* at 219.  Counsel for both parties indicated that they were satisfied with the court's inquiry of the jurors.  *Id*. at 219-221.  The court thereafter provided an additional curative instruction to the jury.  *Id*.

-5-

On September 13, 2013, the trial court issued an order indicating that the jury found Petitioner guilty of aggravated murder with a firearm specification. ECF Dkt. #8-1 at 38-39. The trial court held a sentencing hearing on October 7, 2013 and sentenced Petitioner to life in prison with the possibility of parole after thirty years, with a mandatory and consecutive term of three years for the firearm specification. *Id.* at 42. The sentencing entry was issued on October 15, 2013. *Id.*

### B. **Direct Appeal**

On November 12, 2013, Petitioner, through new counsel, filed a timely notice of appeal to the Ohio Court of Appeals for the Sixth District. ECF Dkt. #8-1 at 46. In the appellate brief filed by counsel, Petitioner asserted the following assignments of error:

I. The jury's verdict of guilty of aggravated murder is against the manifest weight of the evidence.

II. The trial court erred in overruling defendant's motion for a mistrial following the inadvertent disclosure of defendant's criminal record to the jury.

III. The trial court erred in permitting the State of Ohio to introduce, over the objection of defendant, pursuant to Evid. R. 404(b), evidence that the victim had sought and obtained a civil protection order against the defendant.

ECF Dkt. #8-1 at 48-62. The State of Ohio filed an appellee brief. ECF Dkt. #8-1 at 63-80.

On November 21, 2014, the Sixth District Court of Appeals issued an opinion affirming the trial court's judgment. ECF Dkt. #8-1 at 81-94.

### C. **Supreme Court of Ohio**

On December 30, 2014, Petitioner, pro se, filed a notice of appeal in the Supreme Court of Ohio. ECF Dkt. #8-1 at 95. On the same date, Petitioner, pro se, filed a memorandum in support of jurisdiction asserting the following:

Proposition of Law No. I

THE JURY'S VERDICT OF GUILTY OF AGGRAVATED MURDER IS BASED ON INSUFFICIENT EVIDENCE AND IS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Proposition of Law No. II

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR A MISTRIAL FOLLOWING THE INADVERTENT DISCLOSURE OF DEFENDANT'S CRIMINAL RECORD TO THE JURY.

-6-

> Proposition fo Law No. III
>
> THE TRIAL COURT ERRED IN PERMITTING THE STATE OF OHIO TO INTRODUCE, OVER THE OBJECTION OF THE DEFENDANT, PURSUANT TO EVID. R. 404(B), EVIDENCE THAT THE VICTIM HAD SOUGHT AND OBTAINED A CIVIL PROTECTION ORDER AGAINST THE DEFENDANT.

ECF Dkt. #8-1 at 97-116.

On August 26, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal. ECF Dkt. #8-1 at 117.

## D.  **Application for Rule 26(B) Reopening**

On March 17, 2015, Petitioner pro se filed an application pursuant to Rue 26(B) of the Ohio Rules of Appellate Procedure with the Sixth District Court of Appeals.  ECF Dkt. #8-1 at 118-123. Petitioner alleged that his appellate counsel was ineffective because he failed to raise the issue of trial counsel's ineffectiveness for: failing to introduce an alibi defense; conducting a bad cross-examination by failing to use clear contradictions in police reports to impeach state witnesses; failing to use interrogation tapes that clearly showed that the police suggested Petitioner to witnesses; failing to file a motion to suppress Petitioner's identification; failing to fully investigate the case and using text messages, etc. to defend him; and failing to emphasize the lack of gun shot residue on Petitioner's hands or clothing.  *Id*. at 120-121.  The State of Ohio filed a memorandum in opposition to the Rule 26(B) application.  *Id*. at 124-130.

On April 16, 2015, the Ohio appellate court overruled Petitioner's application to reopen his direct appeal, finding that it was untimely filed and Petitioner presented no reasons for filing beyond the required deadline.  ECF Dkt. #8-1 at 131-133.

On May 21, 2015, Petitioner pro se filed a notice of appeal in the Ohio Supreme Court of the Ohio appellate court's denial of his Rule 26(B) application.  ECF Dkt. #8-1 at 134.  In his memorandum in support of jurisdiction, Petitioner asserted the following propositions of law:

> Proposition of Law No. I
>
> A defendant is denied his right to Effective Assistance of Counsel in violation of Article I, Section 10 of the Ohio Constitution and the Sixth Amendment of the United States Constitution when appellate attorney fails to raise key assignment of errors[sic] that prejudiced defendant, and there is a reasonable probability that but for those errors, the result of the appeal would have been different.

-7-

        Proposition of Law No. II

        Violation of Carter's Sixth Amendment right to effective assistance of counsel.

ECF Dkt. #8-1 at 136-144.

        On July 22, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.

ECF Dkt. #8-1 at 148.

**III.**      **28 U.S.C. § 2254 PETITION**

        On April 14, 2016, Petitioner pro se executed the instant petition for a writ of federal habeas

corpus, which was filed in this Court on April 25, 2016.  ECF Dkt. #1.  Petitioner raises the

following grounds for relief:

        GROUND ONE:

        CONVICTION  AGAINST THE MANIFEST WEIGHT OF EVIDENCE & BASED
        ON INSUFFICIENT EVIDENCE.

        Supporting Facts:

        Carter was convicted when the evidence was insufficient as a matter of law to sustain
        the conviction.

        GROUND TWO:

        DUE  PROCESS  VIOLATION  FOR  TRIAL  COURT  OVERRULLING[sic]
        DEFENDANT'S MOTION FOR A MISTRIAL.

        Supporting Facts:

        The trial court overrulled[sic] Defendants[sic] motion for a mistrial following the
        inadvertent disclosure of defendant's criminal history to the jury.

        GROUND THREE:

        DUE PROCESS VIOLATION FOR THE TRIAL COURT PERMITTING THE
        STATE TO INTRODUCE PREJUDICIAL EVIDENCE ABOUT PROTECTION
        ORDER AGAINST THE DEFENDANT.

        Supporting Facts:

        The trial court allowed the State to introduce evidence that victim had sought a civil
        protection order against the defendant.

        GROUND FOUR:

        INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

-8-

Supporting Facts:

Trial counsel was ineffective in his representation of defendant at trial as raised in defendant's application to reopen appeal pursuant to App. R. 26(B).

ECF Dkt. #1.  On July 19, 2016, Respondent filed a return of writ.  ECF Dkt. #8.  On April 5, 2017, Petitioner filed a traverse.  ECF Dkt. #13.

## IV.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.  Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Further, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a

federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

    **C.**    **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits

-10-

of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6ᵗʰ Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6ᵗʰ Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1) whether the petitioner failed to comply with an applicable state procedural rule;

(2) whether the state courts actually enforced the state procedural sanction;

(3) whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6ᵗʰ Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6ᵗʰ Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6ᵗʰ Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6ᵗʰ Cir. 2000) (even if issue is not raised below, where state supreme court

clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986). A petitioner can also show that a fundamental miscarriage of justice will occur if the Court does not address his procedurally defaulted ground for relief. *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Id*.

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

-12-

## V.      STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

-13-

decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.    Decisions of lower federal courts may not be considered.

B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.    The state court decision may be overturned only if:

1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

-14-

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.  ANALYSIS

### A.  Ground for Relief Number 1–Manifest Weight and Sufficiency of the Evidence

In his first ground for relief, Petitioner asserts that his conviction was against the manifest weight of the evidence and insufficient evidence was presented in order to convict him of aggravated murder with a firearm specification.  ECF Dkt. #1 at 5.  Respondent contends that a manifest weight of the evidence assertion is not cognizable before this Court and Petitioner failed to present a sufficiency of the evidence assertion in the state court on direct appeal.  ECF Dkt. #8 at 19-20.  In his traverse, Petitioner reasserts his grounds and highlights conflicts in the testimony at trial.  ECF Dkt. #13 at 4.

The undersigned recommends that the Court find that Petitioner's manifest weight of the evidence assertion is not cognizable before this federal habeas corpus Court.  As Respondent points out, a claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus review.  *Chisholm v. Turner*, No. 5:13CV976, 2014 WL 3349591, at *4-*5

-15-

(N.D. Ohio July 8, 2014).  It is not cognizable before this Court because "[a] 'manifest weight of evidence' claim which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only." *Ladd v. Tibbals*, No. 5:11-cv-173, 2012 WL 5364242, at *7 (N.D. Ohio, Sept. 11, 2012), unpublished, Report and Recommendation adopted by 2012 WL 5364406 (N.D. Ohio, Oct. 30, 2012); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1998)).  Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

Accordingly, the undersigned recommends that the Court decline to review this part of Petitioner's first ground for relief because it lacks cognizability.

The undersigned also recommends that the Court find that Petitioner has procedurally defaulted his assertion concerning the sufficiency of the evidence.  While Petitioner did present this issue to the Supreme Court of Ohio in his appeal from the Ohio appellate court's ruling on his direct appeal, he did not raise this claim in his direct appeal to the Ohio appellate court.  ECF Dkt. #8-1 at 47-55, 92-94, 100-101.  A federal ground for relief is considered exhausted once it has been "fairly presented" at the first possible opportunity within "one complete round of the State's established appellate review process." *Carter*, 2012 WL 3854787, at *6, quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir.2004); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir.2004).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Since Petitioner bypassed the Ohio appellate court on direct appeal and cannot return to that court on this issue, he has failed to exhaust this part of his ground for relief and it is

-16-

therefore barred from consideration by this Court based upon procedural default.

Petitioner can escape this procedural bar if he presents cause to excuse his failure to present the claim to the Ohio appellate court and prejudice arising therefrom, or if he shows that a fundamental miscarriage of justice will result from failing to review the claims. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner presents no cause to excuse his failure to raise this claim before the Ohio appellate court, and he fails to establish resulting prejudice or a fundamental miscarriage of justice. Petitioner does raise the ineffectiveness of appellate counsel as a separate ground for relief in the instant federal habeas corpus petition, but he refers to appellate counsel's ineffectiveness for failing to raise the ineffectiveness of trial counsel based upon a number of alleged failures by trial counsel, none of which relate to a failure of counsel to assert the insufficiency of the evidence on appeal. ECF Dkt. #8-1 at 120. Thus, the undersigned recommends that the Court find that Petitioner has procedurally defaulted the remaining part of Ground for Relief Number 1 asserting the insufficiency of the evidence.

For the above reasons, the undersigned recommends that the Court find that Petitioner's manifest weight of the evidence assertion is not cognizable before this Court and his sufficiency of the evidence assertion is barred by procedural default.

### B. Ground for Relief Number 2– Motion for Mistrial-Unredacted DVD

In his second ground for relief, Petitioner contends that the trial court erred when it overruled his motion for a mistrial after the State of Ohio inadvertently allowed portions of a video to be played to the jury that disclosed some of his criminal history. ECF Dkt. #1 at 7; ECF Dkt. #8-1 at 55-57; ECF Dkt. #8-1 at 86-89; ECF Dkt. #8-1 at 101-102. Respondent asserts that this ground for relief is not cognizable in federal habeas corpus because it is a state law issue and the Ohio appellate court's determination on this issue is otherwise reasonable and not contradictory to clearly established United States Supreme Court precedent. ECF Dkt. #8 at 25-29. In his traverse, Petitioner cites to Ohio Supreme Court caselaw holding that the disclosure of a prior offense is so inflammatory that it should not be revealed because it incites a jury to convict a defendant based upon past bad acts rather than the instant offense. ECF Dkt. #13 at 5, citing *State v. Allen*, 29 Ohio

St.3d. 53, 55, 506 N.E.2d 199 (1987).

The transcript of the jury trial in the instant case shows that the parties stipulated to the admission of DVDs  into evidence which were video recordings of Petitioner's interview with Detective Anderson of the Toledo Police Department.  ECF Dkt. #8-3 at 162-163.  The parties also agreed that the admitted DVDs to be played to the jury would be redacted of references to Petitioner's criminal history.  *Id.*  at 163.  However, upon playing the first DVD of the interview to the jury, it was discovered that the unredacted version of the interview was played which showed Detective Anderson holding pages of documents and referring to Petitioner's criminal history.  ECF Dkt. #8-3 at 166-167.  After a sidebar and subsequent excusal of the jury, counsel for Petitioner moved for a mistrial on the basis of the inadvertent admission of Petitioner's criminal history on the DVD and testimony concerning a prior bad act earlier in the trial.  ECF Dkt. #8-3 at 167.  Counsel noted for the record that the jury saw on the DVD that Petitioner had a criminal record and Detective Anderson said that Petitioner had a seven-page record.  *Id*. at 170.  Counsel further noted that the DVD also referred to a 2007 aggravated menacing offense which Petitioner started talking about as well.  *Id*.  Counsel for Petitioner asserted that even a curative instruction by the trial court would not help.  *Id*.  The prosecution opposed the motion for a mistrial.  *Id.* at 173.

The trial court set forth the standard for determining whether to grant a mistrial, noting its broad discretion and that the granting of such a motion occurs only when the substantive rights of the accused or prosecution are adversely affected.  ECF Dkt. #8-3 at 172-173.  The court thereafter explained that one way that a mistrial could be avoided was by substituting an alternate juror.  *Id*. at 173. The court explained that it reviewed the first four minutes of the unredacted DVD that was presented to the jury and it cited to an Ohio Supreme Court case holding that a trial court did not

-18-

abuse its discretion in denying a motion for mistrial after possibly prejudicial newspaper articles were published during a trial, when the trial court questioned each juror as to whether he or she heard or read anything about the case and issued a repeated instruction for the jury not to read the newspapers. *Id.* at 174, citing *State v. Weind*, 50 Ohio St.2d 224. Following that case, the trial court found it appropriate to question each juror individually as to what he or she remembered from the first four minutes of the unredacted videotape, inform each juror to disregard what they saw or heard, ask whether they could put aside what they did remember, and replace any juror who could not put such information aside with an alternate juror. *Id.* at 174-175. The trial court indicated that it would then also issue another curative instruction with the jury instructions. *Id.* at 175.

The trial court thereafter called each individual juror into chambers, with the prosecution, Petitioner, defense counsel and a court reporter present. ECF Dkt. #8-3 at 176. The court asked each juror if he or she recalled anything with regard to the first four minutes of the DVD that was played to them. *Id* at 177-222. If the juror stated that he or she remembered something concerning a prior offense or prior offenses of Petitioner, the court asked what was remembered and then instructed the juror that the instant case had nothing to do with the prior offenses or documents that he or she remembered seeing or hearing. *Id.* The court then asked each juror if he or she could disregard the first four minutes of the DVD and not consider it as part of jury deliberations. *Id.* The court also asked each juror if he or she would be inclined to go back to the first four minutes of the DVD if he or she did not believe that the State of Ohio proved its case beyond a reasonable doubt as to the elements of the offenses. *Id.* The court also informed each juror that he or she could not discuss the unredacted DVD with other jurors. *Id.* The trial court then gave counsel for each party the opportunity to question each juror. *Id.* The trial court then gave a jury instruction reminding the jury

-19-

that they could not consider the first four minutes of the unredacted version of the DVD. *Id*.

The Ohio appellate court addressed this error raised by Petitioner in the state court, finding the following:

> {¶ 15} In appellant's second assignment of error, he argues that the trial court erroneously overruled his motion for a mistrial following the inadvertent disclosure of his criminal record to the jury.

> {¶ 16} A mistrial is an extreme remedy, "declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462–463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). Regarding mistrial claims, the Supreme Court of Ohio has stated: "This court has * * * adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988), citing *State v. Widner*, 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (1981); *Wade v. Hunter*, 336 U.S. 684, 687, 69 S.Ct. 834, 93 L.Ed. 974 (1949). To that end, a trial court's denial of a motion for mistrial will not be reversed absent an abuse of discretion. *State v. Rossbach*, 6th Dist. Lucas No. L–09–1300, 2011–Ohio–281, ¶ 39, citing *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987).

> {¶ 17} Here, appellant argues that the improperly admitted evidence was "so inflammatory that the court's admonition to the jury to disregard the information is insufficient to cure the error, and reversal is required." In response, the state contends that the "evidence against [appellant] was overwhelming and * * * the isolated reference to [appellant's] criminal record, followed by the individual juror voir dire and cautionary instructions, insured that [appellant] would still receive a fair trial."

> {¶ 18} Regarding evidence of a defendant's prior criminal acts, the Supreme Court of Ohio has stated:

> > The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand. *State v. Allen*, 29 Ohio St.3d 53, 55, 506 N.E.2d 199 (1987).

-20-

{¶ 19} Notwithstanding the foregoing, the trial court in this case made every effort to alleviate the prejudicial nature of the inadvertently disclosed evidence. Specifically, the trial court separately questioned each juror at length regarding whether the jurors heard the inadmissible evidence and, if so, whether they would be able to disregard it and render their judgment without regard to appellant's criminal record. Despite being satisfied with the jurors' responses to the questions, the trial court took further precautionary measures and provided a curative instruction. It is well-established that a jury is presumed to follow such an instruction. Appellant points to no evidence in the record to suggest that the jury did not follow the curative instruction in this case.

{¶ 20} In light of the thorough voir dire and curative instruction provided by the trial court, we conclude that the trial court did not abuse its discretion when it denied appellant's motion for a mistrial. Accordingly, appellant's second assignment of error is not well-taken.

ECF Dkt. #8-1 at 87-89.

The undersigned notes that federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a), *Pulley*, 456 U.S. at 41; *Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Challenges like the instant one concerning a state court's alleged abuse of discretion in denying a motion for a mistrial are generally matters of state law.  *See Adams v. Bunting*, No. 1:14CV1450, 2015 WL 6658680, at 12 (N.D. Ohio Oct. 30, 2015) adopting Report and Recommendation.  Nevertheless, Petitioner's ground for relief is subject to review for a violation of fundamental fairness, that is, to determine whether the alleged errors "so infected the trial with unfairness as to render the resulting conviction a denial of due process, which could not be remedied other than by declaring a mistrial."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Petitioner asserts that

-21-

he was denied due proceess.

The undersigned recommends that the Court find that the inadvertent admission of the first four minutes of the unredacted DVD did not constitute a denial of fundamental fairness.  The trial court thoroughly questioned each juror individually with counsel for both sides and Petitioner present, asked what each remembered from the DVD, if anything, told each juror that whatever he or she remembered did not concern the instant case, and informed each juror individually, and again as a group, that they were to disregard anything from that portion of the DVD.  Each attorney was given the opportunity to question the individual jurors as well.  The short length of the unredacted portion of the DVD that was played to the jury, the court's thorough questioning of each juror individually and **its** curative instructions, and the strong evidence against Petitioner concerning his guilt, did not render the disclosure of the unredacted portion of the first DVD fundamentally unfair.

The evidence against Petitioner was overwhelming, as the Ohio appellate court noted that the victim was Petitioner's estranged wife and he was not willing to accept their separation and contacted many of the victim's friends concerning the victim and told one of them that he wanted to slit the victim's throat and he wanted to kill her.  ECF Dkt. #8-1 at 82.  The Ohio appellate court further found that victim's daughter was present  in the car when the victim was shot and she testified that she was sitting in the back seat behind her mother when she heard gunshots and saw her mom getting out of the car.  ECF Dkt. #8-3 at 34- 47.  She slid out of the car after she heard the first three gunshots and saw Petitioner in a car that she previously saw him drive and heard her mother cry "no."  *Id*. at 47.  She testified that she first saw Petitioner when she got out of the car and saw her mom fall after the first three gunshots.  *Id*. at 47-48.  She recalled hearing a total of eight gunshots and testified that the last three shots occurred while her mother was laying on the ground and

Petitioner was at close range to her mother.  *Id*. at 49-50.  The victim's brother, who was also in the victim's car when she was shot, testified that he was "very positive" that Petitioner was one of the two men that he saw flee the scene after the shots were fired.  *Id*. at 83.  The victim's son, who was also in the victim's car, stated that he heard five to six gunshots before realizing that his mother had been shot and he saw two people pull up to his mother's car driving the same car that he remembered seeing Petitioner  driving on a different occasion.  *Id*. at 83-84.  A neighbor near the scene also testified that he heard the shots and saw someone matching Petitioner's description fire three shots, pause, and then fire more shots toward the ground.  *Id*. at 84.  He heard someone shout, "someone shot my mom," and then saw the person who fired the shots flee in a dark blue Ford Focus, the same car that the victim's children saw Petitioner in at the scene and driving on a prior occasion.  *Id*. Petitioner's friend testified that on Christmas Eve of 2012, he loaned Petitioner his blue Ford Focus. *Id*. at 92.  He stated that he was awakened at 12:30 a.m. on Christmas Day of 2012 by a phone call from Petitioner telling him that the car was fine but he was not, although Petitioner would not explain why.  *Id*. For these reasons, the undersigned recommends that the Court dismiss Petitioner's second ground for relief.

### C.      Third Ground for Relief-Motion for Mistrial-Prior Bad Act

In his third ground for relief, Petitioner asserts that the trial court violated his due process rights by allowing the State of Ohio to introduce prejudicial evidence concerning a civil protective order that the victim obtained against him.  ECF Dkt. #1 at 8; ECF Dkt. #13 at 6.

Similar to Ground for Relief Number 2 above, this ground is not cognizable in federal habeas corpus as it is a state law issue.  Trial court rulings on the admission of evidence are state law issues

not cognizable in federal habeas corpus, except for a review to determine if the ruling violated fundamental fairness.  *See Donnelly*, 416 U.S. at 642-643, *Adams*, 2015 WL 6658680, at 12.  When such errors are alleged concerning prior bad acts, the federal court reviews the claim to determine whether the evidence was rationally connected to the crime charged. *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir.1980).

The trial court had ruled that the victim seeking a civil protective order against Petitioner in domestic relations court was appropriate evidence under Rule 404(b) of the Ohio Rules of Evidence. ECF Dkt. #8-3 at 127-128.  The court cautioned that the State of Ohio could inquire about the civil protective order, but could not reference any criminal proceedings or pending criminal cases concerning Petitioner and the victim.  *Id*.; ECF Dkt. #8-2 at 19-21.  At trial, when the prosecution questioned the victim's son, Leonard Davis, on direct examination about an incident on November 5, 2012, over a month before the shooting, Mr. Davis explained that he was with his mom and siblings at his mom's place of work waiting in the car for his mother to clock into work and return to the car to take his siblings to school and drop him off to his friends.  ECF Dkt. # 8-3 at 130-132. Mr. Davis further testified that right after his mom went into work, Petitioner opened the driver side door of the car that they were in and asked Mr. Davis' sister where the victim was, looked in the backseat and saw Mr. Davis, and closed the door as Mr. Davis tried to get out and approach him. *Id*. at 133.  Mr. Davis testified that Petitioner closed him in and ran back toward the car that he drove up in and when Mr. Davis got out of the car, Petitioner pulled a gun on him.  *Id*.  Mr. Davis indicated that the car that Petitioner was driving in was a blue Ford Focus, the same car that witnesses identified Petitioner was in on the night of the shooting of the victim.  *Id*.  Mr. Davis further testified that the day after Petitioner approached him at his mother's workplace, his mother went down to

-24-

domestic relations court to file for a protective order against Petitioner, which was in effect through

the date of the shooting on December 24, 2012.  *Id*. at 133-135.

Petitioner presented this as an assignment of error to the Ohio appellate court, asserting that

the trial court violated Rule 404(b) of the Ohio Rules of Evidence in admitting any information about

the civil protection order against him.  ECF Dkt. #8-1 at 48.  The Ohio appellate court held:

> {¶ 21}  In his third assignment of error, appellant argues that the trial court erred in allowing evidence of a prior altercation he was involved in with Triplett's son, Leonard Davis.

> {¶ 22}  Approximately seven weeks prior to Triplett's murder, appellant approached Triplett's car while it was parked at her place of employment. Davis, among others, was waiting in the car for Triplett to clock in for work. Davis and appellant became involved in a verbal altercation, which ultimately led to appellant placing a handgun in Davis's face and threatening him. Appellant eventually departed without further incident. Upon learning of appellant's behavior, Triplett sought, and was eventually granted, a civil protection order against appellant. These facts were allowed into evidence at trial over the objection of appellant's counsel.

> {¶ 23}  Appellant's argument centers on the admission of "other crimes, wrongs or acts" under Evid.R. 404(B). Evid.R. 404(B) states in relevant part:

>> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

> {¶ 24}  In order to be admissible, "other acts" evidence under Evid.R. 404(B) must share a "temporal, modal, and situational relationship with the acts constituting the crime charged * * *." *State v. Burson*, 38 Ohio St.2d 157, 159, 311 N.E.2d 526 (1974).

> {¶ 25}  Here, appellant argues that the evidence was inadmissible as it was not used to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The state, for its part, asserts that the evidence was used in order to establish appellant's identity.

{¶ 26}  In support of its argument, the state cites several cases it alleges are analogous to the case sub judice. One such case is *State v. Griffin*, 1st Dist. Hamilton No. C–020084, 2003–Ohio–3196. In *Griffin*, another murder case, the defendant insisted that he was not responsible for his wife's death, but, rather, that she took her own life by shooting herself in the head. In countering the defendant's assertion that he was not the shooter, the state elicited certain "other acts" evidence consisting of testimony from the victim's neighbors who had personally observed the defendant "either physically assault or threaten to kill his wife in the weeks before her death." *Id*. at ¶16. Further, the victim's coworkers testified that they had observed injuries on the victim's body about one month prior to the murder and were told by the victim that the injuries were the result of domestic violence at the hands of the defendant. *Id*.

at ¶ 21.

{¶ 27}  On appeal, the defendant argued that the "other acts" evidence was used merely to demonstrate his propensity for committing the murder. At the outset, the appellate court noted defendant's claim that his wife committed suicide, finding that said claim placed the issue of identity squarely before the trier of fact. *Id*. at ¶ 17. Notably, the prior acts of domestic violence occurred within weeks of the murder. Consequently, the court held that these acts were "sufficiently connected in a temporal sense to the facts of [the victim's] death to be probative of the identity of the shooter." *Id*. at ¶20. Notwithstanding its admissibility under Evid.R. 404(B), the court went on to indicate that the admission of the "other acts" evidence would have been harmless in any event in light of the "substantial other evidence supporting the guilty verdict." *Id*. at ¶ 24, citing *State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994).\

\  {¶ 28}  We find that *Griffin* is analogous to the present case. Indeed, both the defendant in *Griffin* and the appellant in this case placed the identity of the killer at issue by denying any involvement with the death of the victims. Additionally, the "other acts" offered into evidence in both cases was temporally related to the offense.

Finding this case analogous to *Griffin*, and further finding the court's reasoning in that case persuasive, we conclude that the trial court did not abuse its discretion by  allowing evidence of the existence of a civil protection order against appellant and the facts surrounding the procurement of the order. *See also State v. Newcomb*, 3d Dist. Logan No. 8–01–07, 2001 WL 1504260 (Nov. 27, 2001) (affirming trial court's admission of Evid.R. 404(B) evidence in order to identify the defendant as the murderer and rebut his claim that his brother murdered the victim); *State v. Thompson*, 8th Dist. Cuyahoga No. 81322, 2003–Ohio–3939 (allowing evidence of prior domestic violence where it was relevant to prove the defendant's

-26-

identity and the domestic violence occurred within close proximity to the time of the murder).

{¶ 29}  Accordingly, appellant's third assignment of error is not well-taken.

ECF Dkt. #8-1 at 89-92.

The undersigned recommends that the Court find that the Ohio appellate court's finding that the trial court's admission of information concerning the civil protective order did not violate fundamental fairness.  The United States Supreme Court and the Sixth Circuit have held that a defendant is not denied a fair trial when a trial court admits prior bad acts evidence that is relevant in the defendant's trial.  *See Estelle*, 502 U.S. at 69–70; *Dowling v. United States*, 493 U.S. 342, 353–54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439–40 (6th Cir.2001).  In the instant case, the issuance of the civil protective order was relevant to the trial as the Ohio appellate court held that Petitioner denied involvement in the victim's death and thus placed his identity in issue.  ECF Dkt. #8-1 at 91.  The appellate court also found that the civil protective order was temporally relevant to the offense for which Petitioner was charged as the victim sought the protection order only a short period of time, a little over a month before she was killed.  *Id*. at 91-92.  Accordingly, the evidence was rationally connected to the crime for which Petitioner was charged and its admission was therefore not violative of fundamental fairness.

For these reasons, the undersigned recommends that the Court find that Petitioner's third ground for relief is not cognizable before this Court and is not violative of fundamental fairness.

**D.**      **Fourth Ground for Relief - Ineffective Assistance of Trial Counsel**

In his final ground for relief, Petitioner asserts that his trial counsel was ineffective for the

reasons that he set forth in his Rule 26(B) application to reopen his appeal that he filed with the Ohio appellate court. ECF Dkt. #1 at 1. Respondent contends that the Court should decline to address this ground for relief because Petitioner failed to raise an ineffective assistance of trial counsel claim in his direct appeal to Ohio appellate court or in his appeal to the Ohio Supreme Court, and the Ohio appellate court denied Petitioner's Rule 26(B) application because it was untimely filed. ECF Dkt. #8 at 32-33.

In his Rule 26(B) application to reopen before the Ohio appellate court, Petitioner asserted that his appellate counsel was ineffective because he failed to raise trial counsel's ineffectiveness in failing to perform or inadequately performing a number of tasks, particularly: trial counsel's failure to introduce an alibi defense; inadequate cross-examination; failing to use interrogation tapes of witnesses that showed the police suggesting that Petitioner was the perpetrator to the witnesses; failing to file a motion to suppress his identification; failing to fully investigate the case; and failing to emphasize the lack of gunshot residue on Petitioner's person or clothing. ECF Dkt. #8-1 at 120-121. The Ohio appellate court denied Petitioner's Rule 26(B) application because it was untimely filed as Petitioner did not file a application until almost one month past the filing deadline and he offered no reason for failing to timely file his application.  *Id*. at 132-133.

The undersigned recommends that the Court decline to address Petitioner's fourth ground for relief because it is procedurally defaulted and Petitioner fails to present any assertion concerning a miscarriage of justice.  Respondent correctly notes that Petitioner did not present any ineffective assistance of trial counsel claims on direct appeal to the Ohio appellate court or the Ohio Supreme Court and the filing of the Rule 26(B) application for ineffective appellate counsel does not preserve the underlying trial counsel ineffectiveness claims presented in that application.  *See Stojetz v. Ishee*,

389 F.Supp.2d 858, 899 (S.D. Ohio 2005). Petitioner has thus procedurally defaulted his ineffective trial counsel claims because he could have and should have presented the claims on direct appeal but did not do so and he offers no reason for failing to do so.

Further, Petitioner did not timely file his Rule 26(B) application within ninety days of the journalization of the appellate judgment on his direct appeal as required by Rule 26(B) of the Ohio Rules of Appellate Procedure. Ohio App. R. 26(B)(1). The Ohio appellate court issued its decision and judgment on Petitioner's direct appeal on November 21, 2014 and Petitioner did not file his Rule 26(B) application for reopening until March 17, 2015, nearly thirty days after the February 19, 2015 deadline for filing it. ECF Dkt. #8-1 at 81, 118. And as the Ohio appellate court pointed out, Petitioner offered no reason for his untimely filing of the Rule 26(B) application. *Id*. at 119-123, 132.

The Ohio appellate court's denial of Petitioner's Rule 26(B) application on the basis of its untimely filing meets the *Maupin* procedural default factors. It is a firmly established rule and the Ohio appellate court actually enforced this procedural rule by denying Petitioner's Rule 26(B) application solely on that basis. ECF Dkt. #8-1 at 132-133. Moreover, it is well established in the Sixth Circuit that the untimely filing of his Rule 26(B) is an adequate and independent procedural ground under *Maupin* upon which to foreclose federal habeas review. *See, e.g., Parker v. Bagley,* 543 F.3d 859, 861–862 (6th Cir. 2008); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002). Thus, procedural default bars this ground for relief unless Petitioner can establish cause to excuse his procedural default and resulting prejudice, or a fundamental miscarriage of justice if his claim is not considered. Petitioner fails to present any cause to excuse his procedural default or resulting prejudice, and he fails to assert or show a fundamental miscarriage of justice.

-29-

Accordingly, the undersigned recommends that the Court find that Petitioner has procedurally defaulted his fourth ground for relief.

**VII.** **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.

DATE:   April 10, 2018                                        */s/ George J. Limbert*
                                                             GEORGE J. LIMBERT
                                                             UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).